UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| ROBERT ASH | CIVIL ACTION NO. 06-1854 |
| VS. | SECTION P |
| GLOBAL EXPERTISE IN OUTSOURCING, INC. ET AL. | JUDGE MINALDI |
| | MAGISTRATE JUDGE WILSON |

REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on October 18, 2006 by *pro se* plaintiff Robert Ash.  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Allen Correctional Center (ACC), Kinder, Louisiana and he complains that he was the victim of excessive force, that he received inadequate medical attention, and that his due process rights were violated when he was wrongfully confined in ACC's administrative segregation.  He names ACC Corrections Officers Nickolas Volloer, Danny Fontenot, Charles Smith and Walter Garnett, ACC Medical Director Nelda Wilson, LDOC Secretary Richard Stalder, and Global Expertise in Outsourcing, Inc. (GEO) as defendants.  He prays for declaratory judgment and an unspecified amount of compensatory and "other" damages as well as an unspecified amount of punitive damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted; and,

it is further recommended that plaintiff's supplemental state law claims be **DISMISSED**

**WITHOUT PREJUDICE.**

### *Statement of the Case*

Plaintiff has made a number of factual allegations which are unrelated to his claims.

Nevertheless, plaintiff's factual allegations may be summarized as follows:

In August 2003 plaintiff, an inmate at ACC, was assigned to the ACC "Road Crew." On

August 19, 2005, plaintiff was placed in PHD Mars Unit Tier C-2, Cell 10 pending an

investigation for violation of institutional rules. On August 27, 2005, plaintiff was removed from

the Road Crew and placed in segregation for investigation.

On September 7, 2005, plaintiff was formally charged with a violation of Rule 30(D),

General Prohibited Behavior. He was charged with engaging in a non-professional relationship

with an employee, visitor, guest or other person while working on the Road Crew.[1]  On

September 9, 2005, plaintiff was found guilty of the charge at a disciplinary hearing convened by

Chairman John Onellion.  As a result of this conviction, the forfeiture of 180 days of "good-

time" was ordered and plaintiff was placed in administrative segregation pending a transfer. On

September 19, 2005, plaintiff submitted an appeal. [Doc. #1-4, pp. 3-4, Exhibit A-2].

On September 12, 2005, plaintiff was charged with a violation of Rule 30(L). He was

accused of placing a three-way telephone call to Bobby Jean Williams in Oakdale, Louisiana on

---

[1] See LDOC Disciplinary Report which stated in part, "On August 19, 2005 Investigative Captain Terry Langly received information that I/M (inmate) Robert Ash ... was sending money to an employee of Allen Correctional Center (ALC) through a third person who lived in a nearby community. Investigation revealed that a number of money orders had been sent by I/M Ash's friends and family to a woman who inmate met while working on Road Crew 4 in the community where she lived. They became acquainted and they corresponded and she visited him at the facility. He eventually used her as a go-between in his financial dealings with employees of ALC." [Doc. 1-4, p. 2, Exhibit A-1].

August 27, 2005 at 9:11 a.m. [See Doc. #1-4, pp. 8-9, Exhibit A-5].  (Plaintiff claims that the call was alleged to have originated from Mars Unit Tier C-1. However, plaintiff further claims that he was not assigned to that unit until September  17, 2005).  On September 14 plaintiff appeared at another disciplinary hearing convened by Chairman Onellion. He was found guilty as charged. The Board ordered the forfeiture of 180 days of "good time" and loss of telephone privileges for 12 weeks.

On September 27, 2005, plaintiff appealed this decision to the Warden and the appeal was assigned case number ALC-2005-190.  Plaintiff did not allege his alibi defense in his appeal to the Warden. [Doc.# 1-4, pp. 10-11, Exhibit A-6]. On October 14, 2005, Warden Terrell denied relief and plaintiff appealed to the Secretary of the LDOC. [Doc. 1-4, pp. 13-14, Exhibit A-8].

On November 3, 2005, plaintiff corresponded with Disciplinary Board Chairman Onellion inquiring about the institution's failure to respond to his appeal of the September 9, 2005 Rule 30(d) conviction. [Doc.# 1-4, p. 5, Exhibit A-3].

Plaintiff remained on Mars C-1 for a period of five months before being transferred to "working cellblock," Mars Unit A-2, Cell 13.

On November 10, 2005, plaintiff complained to LDOC Secretary Stalder about the "improper handling of disciplinary appeal procedure." [Doc. 1-4, p. 6, Exhibit A-4].

During the period that plaintiff was assigned to "working cellblock," Sgt. Dana McFatter, a female corrections officer, complained of "inappropriate sexual behavior... in or around plaintiff's cell."  A second female corrections officer, Ms. Phillips was then assigned to "working

cellblock."[2]

On April 21, 2006, plaintiff was at the urinal when Lt. Charles Smith ordered plaintiff's cell-mate, Damian Etienne, to turn around to be handcuffed as Sgt. Nickolas Volloer and Danny Fontenot stood at the front bars by the shower and another unidentified corrections officer (believed to be Sgt. Glaze's son) operated a video camera.  Then, Lt. Smith ordered plaintiff to put his hands behind his back to be handcuffed. Plaintiff reminded Smith that a pre-existing disability prevented plaintiff from being able to put both hands behind his back. Smith ignored plaintiff's protest and again ordered him to place his hands behind his back. Plaintiff then reminded Smith that ACC security normally uses two sets of hand cuffs for plaintiff on account of his disability.  Lt. Smith then "jerked plaintiff's cuff hand down forcing his face against the bars, while using a container of maze [sic] to spray directly into plaintiff's eyes."  The "maze" caused Lt. Smith to choke and back away. Smith then ordered Volloer to utilize a second pair of handcuffs on plaintiff.  Plaintiff was then escorted to the front bars by the shower. Captain Garnett entered the tier and plaintiff advised him of what had happened. Plaintiff also complained that the cuffs were too tight. Garnett loosened the handcuffs.

Later, on the same day, Volloer signed a disciplinary report accusing plaintiff of theft of a lighter belonging to Sgt. Fontentot in violation of Rule 22.  The theft was alleged to have occurred on April 16 during recreation period. [Doc.# 1-4, p. 16, Exhibit B-1].  Plaintiff claims that he was not guilty and alleged that he had not participated in the recreation period on that day. Nevertheless, plaintiff appeared before the Disciplinary Board on April 26, 2006. The Board was

---

[2] It is unclear why plaintiff makes this allegation. He has not named these Corrections Officers as defendants [Doc.# 1-3, paragraphs 3-10] nor has he asserted this incident as a claim for relief. [Doc. #1-3, paragraphs 69-76].

chaired by Captain Rider and included Captain Granger, a violation of regulations which prohibit

two security staff members from participating. Plaintiff was convicted in the proceeding and

sentenced 28 days loss of canteen and recreation privileges. [Doc. #1-4, p. 16; Exhibit B-1].

On May 2, 2006, plaintiff submitted a Request for Medical Treatment and was referred to

an eye doctor by Nurse Nelda Wilson.  (Plaintiff complains that Wilson did not examine him

prior to making the referral.) [Doc.# 1-4, p. 18, Exhibit B-2].

On May 10, 2006, plaintiff submitted an Administrative Remedies Procedere (ARP)

grievance to Warden Terrell concerning the April 21, 2006 incident. [Doc. #1-4, pp. 23-24;

Exhibit B-5].[3]  The ARP was assigned case number ALC-2006-379 and was accepted by the

Warden's office on May 11, 2006. [Doc. 1-4, p. 25; Exhibit B-6].  On June 9, 2006, his grievance

was denied and plaintiff appealed the rejection.  [Doc. #1-4, p. 26; Exhibit B-7 ].[4]  His appeal

---

[3] Plaintiff's original version of the events of April 21, 2006, as set forth in his grievance are as follows: "On 4-21-06 Lt. Smith entered my assigned housing unit at about 9:12 a.m. and approached my cell and belligerently ordered me to the bars to be handcuffed. I complied first by advising Lt. Smith that it would take at least two sets of cuffs to properly secure my hands behind my back due to my left arm having been broken in the past. After being informed of my injured arm, Lt. Smith deliberate indifference simply ignored my plea and advised me that I was being videotaped and better do as he says before it turns out bad for me. I then turned around and place my right arm/hand through the cell door tray hatch to be cuffed. After cuffing my right hand Lt. Smith suddenly and without warning, need, or provocation sprayed a prolonged burst of a chemical agent directly into my face and eyes while still holding my cuffed right hand without giving me a chance to adjust my left arm to his free access...
*       *       *
Furthermore, my eyes are still partially inflamed up until this very date and have yet to be treated by the medical department staff whose been placed on multiple formal notices..."[Doc. #1-4, pp. 23-24, Exhibit B-5].

[4] The ACC Administration's findings are at odds with plaintiff's version of the incident: "After a review it was found that on April 21, 2006 Cellblock Lt. Charles Smith was conducting cell searches on Mars D-1 tier. When Lt. Smith arrived at cell #3 he requested that the inmate come to the bars to be restrained so that his cell could be searched. When Lt. Smith placed the restraint on inmate's wrist he jerked away and refused to return to the bars so that the other hand could be placed in the restraints. After several direct verbal orders Lt. Smith administered chemical agents into the cell and the inmate complied and was restrained. An unusual occurrence report (UOR) was completed and all required notifications were made. A disciplinary report was not completed for defiance, but was for theft (property belonging to facility staff in his possession). Had inmate complied with staff direction force would not have been used on him and only the appropriate amount of force was used for the situation." [Doc.# 1-4, p. 26, Exhibit B-7].

was then rejected by the LDOC Secretary on August 1, 2006. [Doc. #1-4, p. 27; Exhibit B-8 ].[5]

On May 3, 2006, plaintiff filed an ARP (ALC – 2006 – 390) charging Captain Garnett with the unauthorized seizure of plaintiff's personal property (religious paraphernalia, including prayer rug, Koran, etc. and mail) and his refusal to return same. [Doc. 1-4, pp. 29-32; Exhibit B-10].[6]

On May 12, 2006, plaintiff filed a medical complaint ARP which was assigned case number ALC – 2006 -381.  In the grievance plaintiff complained, "On 5-2-06 I ... requested medical attention 'again' to see someone about the blurness [sic] in my right eye. The medical department here at ALC has charge me $3.00 Dollars for a medical assessment fee, but I have not seen anyone for that evaluation to be made. That is consider flat out stealing. Because the law states that sick call must be conducted in a fashion that permits prisoner's complaints to be evaluated in a professional manner. Prison's may use nurses, physicians assistants or medical technical assistants to determine priorities (again) I have not seen anyone ... Now I can't say who's the nurse that made this call so all members of ALC's medical team are responsible for the incident..." [Doc.# 1-4, pp. 21-22, Exhibit B-4].

On July 5, 2006, plaintiff was released from "working cellblock."

On July 23, 2006, he was summoned to the Command Post by Warden Allemond who

---

[5] The Secretary found, "All pertinent documentation surrounding your request, including the unusual occurrence report, statements provided by the security staff and your medical records have been reviewed. None of the documents reviewed support your allegations. Through your own actions, staff was forced to use only the amount of force necessary to bring you into compliance with the verbal orders issued to you by staff." [Doc.# 1-4, p. 27, Exhibit B-8].

[6] It is unclear why plaintiff makes this allegation. He has not asserted this incident as a claim for relief. [Doc.# 1-3, paragraphs 69-76].

informed plaintiff that the LDOC had recalculated his sentence to eliminate "good time" so that

plaintiff would be required to remain in custody until his full-term release date, April 1, 2015.

Plaintiff was released to the general population.

On August 16, 2006, plaintiff was provided information concerning Act 150 which

resulted in the finding that plaintiff was not eligible to receive diminution of sentence and the

amendment of plaintiff's release date to April 1, 2015.[7]

### *Claims for Relief*

Plaintiff made the following claims for relief:

1.  Lt. Smith used excessive force against him in violation of the Eighth Amendment
    and Louisiana law;

2.  Volloer and Fontenot violated plaintiff's Eighth Amendment rights by failing to
    intervene and to prevent the use of excessive force by Lt. Smith;

3.  Captain Garnett violated plaintiff's Eighth Amendment rights by failing to take
    action to curb the "known pattern of physical abuse of inmates by defendant
    Charles Smith";

4.  Volloer, Fontenot, Wilson, and Garnett violated plaintiff's rights by failing to take
    disciplinary action and otherwise covered up the physical abuse of plaintiff by
    defendant Smith;

---

[7] LDOC advised plaintiff that a review of his FBI rap sheet revealed an arrest and conviction for Robbery 3rd Degree in Alabama in 1994 which resulted in the imposition of a sentence of 5 ½ years. LDOC concluded that this offense was a "crime of violence" and since petitioner was serving time for armed robbery in Louisiana, the latter conviction constituted his second crime of violence making him ineligible for diminution of sentence ("good time") under Act 150 of the 1995 3rd Extraordinary Session of the Louisiana Legislature. [Doc.#1-4, p. 34, Exhibit C-1].

5.      Plaintiff suffered violations of his due process rights in his disciplinary

proceedings;

6.      Richard Stalder and other unspecified defendants' acted with deliberate

indifference to the plaintiff's rights and violated his due process rights when they

failed to overturn plaintiff's disciplinary convictions;

7.      Nelda Wilson acted with deliberated indifference to plaintiff's serious medical

needs in violation of the Eighth Amendment when she failed to provide examine

the plaintiff's eyes and treat his "facial distortion"; and

8.      GEO, Inc., is liable under Louisiana tort law for hiring inexperienced personnel

and providing little or no training.

### *Law and Analysis*

### *1. Frivolity Review*

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A;

28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).  A claim is frivolous if it

lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see,

*Denton v. Hernandez*, 112 S.Ct. 1728, 1733 (1992). A civil rights complaint fails to state a claim

upon which relief can be granted if  it appears that no relief could be granted under any set of

facts that could be proven consistent with the allegations of the complaint. Of course, in making

this determination, the court must assume that all of the plaintiff's factual allegations are true.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint and the exhibits submitted along with the complaint, provide a detailed description of the facts relied upon to support his specific theories of liability with respect to each of the defendants. Therefore, further amendment of these pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted.

### 2. Excessive Force Claim

The Eight Amendment proscribes "punishments" that are "cruel and unusual." Thus, "[w]henever prison officials stand accused of using excessive physical force in violation of the

Cruel and Unusual Punishments Clause, the core judicial inquiry is . . .  whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." The factors relevant in the inquiry as to whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 838-839 (5 Cir.1998), citing *Hudson v. McMillian*, 112 S.Ct. 995, 999 (1992).

The use of mace and other chemical agents, in appropriate quantities, where necessary to restore prison order and security, does not constitute cruel and unusual punishment, even if the inmate is locked in his prison cell or is in handcuffs. *Ort v. White*, 813 F.2d 318, 324 (11th Cir.1987); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984).  The use of a chemical agent is a reasonable alternative to a physical confrontation between an inmate and prison guards, for compelling compliance from an inmate who cannot be persuaded to obey an order. See *Colon v. Schneider*, 899 F.2d 660, 668-669 (7th Cir.1990);  *Jones v. Shields*, 207 F.3d 491 (8th Cir.2000).

In *Albers v. Whitley*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986), the Supreme Court discussed the use of force during a prison disturbance, as follows:

> Where a prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and prison staff ... the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' '... [S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the

extent of injury inflicted' are relevant to that ultimate determination. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur·...  But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. When the 'ever present potential for violent confrontation and conflagration'... ripens into actual unrest and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators' ...  carries special weight. Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates ... It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, ... courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.

The Fifth Circuit has likewise held that the use of mace or even tear gas by prison guards to quell a disturbance is not unreasonable and does not constitute cruel and unusual punishment. See *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir.1975), *cert. den.*, 423 U.S. 946, 96 S.Ct. 360, 46 L.Ed.2d 280 (1975); *LeBlanc v. Foti*, 487 F.Supp. 272, 275 (E.D.La.1980), and cases cited therein.

The facts alleged by the plaintiff himself reveal that Smith first ordered plaintiff to put his hands behind his back. Plaintiff refused and advised Smith that he was physically incapable of complying. Smith ordered plaintiff to comply a second time and instead of complying, plaintiff "explained" that two sets of handcuffs would be needed. [Doc.#1-3, paragraphs 28-32; see also Doc.#1-4, p. 23, Exhibit B-5 wherein plaintiff admits that he was ordered to the cell bars to be handcuffed and "complied by advising" the officer of a previous injury and then placing only one

11

arm through the hatch instead of complying with the original order].  In his complaint, plaintiff

alleged that Smith then "jerked his cuff hand down" however, in his earlier grievance plaintiff

made no mention of having his arm jerked. [Compare Doc.# 1-3, paragraph 33 with Doc.# 1-4, p.

23, Exhibit B-5].  Further, plaintiff alleged that Smith sprayed the chemical agent directly into his

face without explaining why he was facing the bars when he had previously been ordered to place

his hands behind his back.[8]  Finally, plaintiff complained only that his eyes were "partially

inflamed" as a result of the incident. [Doc.# 1-4, p. 24, Exhibit B-5].  The evidence reveals that

plaintiff did not request medical attention until May 2, 2006, eleven days after the event. [Doc.#

1-4, p. 18, Exhibit B-2].  In short, the plaintiff's allegations and exhibits tend to establish that

force was applied in a good-faith effort to maintain or restore discipline, and not maliciously and

sadistically to cause harm.

In arriving at this conclusion, the undersigned has applied the factors articulated in

*Hudson v. McMillian, supra.* cited with approval by *Baldwin v. Stalder*, 137 F.3d 836, 838-839

(5th Cir.1998). First, with respect to the extent of the injury suffered, it is clear that plaintiff's

injury, if any, was *de minimis*; plaintiff only complained that his eyes were "partially inflamed"

and plaintiff did not even seek medical attention until eleven days after the event. Second,

regarding the need for the application of force, it appears that, by his own admission, plaintiff

refused at least twice to comply with Lt. Smith's direct command.  Further, the officers could not

be expected to enter plaintiff's cell while plaintiff remained unrestrained; the use of the chemical

---

[8] Indeed, the ACC Administration's explanation of the events of April 21, 2006 explain this discrepancy. According to the Administration, "When Lt. Smith placed the restraint on inmate's wrist he jerked away and refused to return to the bars so that the other hand could be placed in the restraints. After several direct verbal orders Lt. Smith administered chemical agents into the cell and the inmate complied and was restrained." [Doc.# 1-4, p. 26, Exhibit B-7].

agent to obtain plaintiff's compliance was clearly a more reasoned and responsible alternative to the use of physical force.

In short, plaintiff's excessive force claim against Lt. Smith is frivolous and dismissal on that basis is appropriate.

### 3. Failure to Intervene/Failure to Discipline/ "Cover-Up"

Plaintiff claims that Fontenot and Volloer are liable because they failed to intervene and protect him from Smith's alleged  excessive use of force.  However, since, as shown above, Smith's actions did not constitute excessive force, Fontenot and Volloer are not liable for failing to intervene and protect him. *Cf. Hale v. Townley*, 45 F.3d 914, 919 (5th Cir.1995).  The same logic demands that the "failure to discipline" and "cover-up" claims against Volloer, Fontenot, Wilson, and Garnett be dismissed.

### 4. Due Process Violations

Plaintiff's contentions concerning violations of his due process rights in the various prison disciplinary proceedings and appeals also fail to state a claim for which relief might be granted.

Plaintiff claims that he was wrongfully convicted of rules violations.  As a result of the allegedly unfair disciplinary proceedings, plaintiff was assigned to administrative segregation, then working cell-block, a 12 weeks loss of telephone privileges, and, the loss of recreation and canteen privileges. He also lost 360 days of "good-time" credits, however, as shown above, it was subsequently determined that plaintiff was ineligible to earn "good-time" in the first place since he had been convicted of a second crime of violence.

In the wake of *Sandin v. Conner*, 115 S.Ct. 2293, 2294 (1995), the ambit of a prisoner's

potential Fourteenth Amendment due process liberty claims has been dramatically narrowed. A prisoner has a liberty interest only in "freedom[s] from restraint . . . impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).

Ultimately, plaintiff lost no good time by virtue of the allegedly inadequate or unfair disciplinary proceedings.  At worst, those proceedings resulted in a five month stay in administrative segregation and working cell-block and his loss of telephone, recreation and canteen privileges for even briefer periods of time.  Therefore, since the duration of plaintiff's sentence was not adversely affected by these disciplinary hearings, he has no federally protected due process rights in connection with the proceedings. Consequently, plaintiff's due process claims against Secretary Stalder and other unspecified defendants lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 109 S.Ct. 1827 (1989).

### 5. *Medical Care/Deliberate Indifference*

Plaintiff claims that he has been denied adequate medical care.  More specifically he contends that Nurse Nelda Wilson's  failure to provide for an eye examination and treatment of his "facial distortion" constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment.  In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was

14

"sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v.*

*Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Deliberate indifference in the

context of the failure to provide reasonable medical care to a convicted prisoner means that: (1)

the prison officials were aware of facts from which an inference of substantial risk of serious

harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response

indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*,

245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have

perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas*

*Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly

negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate

indifference encompasses only unnecessary and wanton infliction of pain repugnant to the

conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also

*Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with

what medical care is appropriate does not state a claim of deliberate indifference to serious

medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

        Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context.

Plaintiff has not shown that Nurse Wilson or her staff were aware of facts from which an

inference of substantial risk of serious harm could be drawn.  As shown above, plaintiff's chief

complaint was that his eyes were "partially inflamed".   Further, the documents supplied by

plaintiff establish that he did not even seek medical attention until eleven days after the incident

that he claimed was responsible for his condition. Finally, plaintiff never complained to the ACC

medical staff of any "facial distortion."

Even if he had made a showing that the medical staff  were aware of facts from which an inference of substantial risk of serious harm could be drawn,  he has failed to show that these defendants <u>actually drew such an inference and that their response to his complaints indicated</u> <u>that they subjectively intended that harm occur to him</u>. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).  In fact, Nurse Wilson's response to the one and only medical request of record was to have plaintiff placed on the facility's "eye doctor list."  In addition, whether or not Wilson or  the other defendants  "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since  "the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).  The pleadings and exhibits fall far short of such a showing.  Plaintiff admits that Nurse Wilson recommended that he be seen by a physician, however, his chief complaint is that she made that referral without first examining him.  According to his ARP he requested medical attention to address "blurness" in his right eye, a claim he did not raise in the excessive force grievance filed against Lt. Smith. (As shown, he complained only that his eyes were "partially inflamed." [Doc.# 1-4, p. 24, Exhibit B-5]).

In short, plaintiff's allegations are insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).   The facts alleged herein, taken as

true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims are therefore frivolous and dismissal on that basis is recommended.

*6. Claims Arising Under Louisiana Law*

Finally, plaintiff has raised supplemental state law claims under Louisiana law.  In conjunction with his excessive force claim against Lt. Smith, he alleged intentional tort claims (battery and assault) against Lt. Smith under Louisiana law; with regard to his final claim for relief, he alleged negligence claims under Louisiana law against GEO based upon their hiring practices and their failure to adequately train employees.

A federal district court has supplemental jurisdiction over all other claims that are so related to claims in the action within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

Because dismissal is recommended for all of plaintiff's federal civil rights claims, it is appropriate that the court decline to exercise supplemental jurisdiction over these remaining state law claims and dismissal of those claims is recommended.  See *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir.1999); *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir.1994).

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(I) and (ii).

**IT IS FURTHER RECOMMENDED** that the plaintiff's Supplemental State Court claims against Lt. Smith and GEO, Inc. be **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to refile these claims in the appropriate state court.[9]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, February 14, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[9]Pursuant to 28 U.S.C. § 1367(d), the limitations period for plaintiff's state law claim is tolled while the claim is pending in federal court and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.